

**RAS**
ROBERTSON, ANSCHUTZ, SCHNEID,
CRANE & PARTNERS, PLLC
L A W   O F F I C E S

**Sara Z. Boriskin, Esquire**
*Managing Partner, New York Office*

900 Merchants Concourse,
Suite 310
Westbury, NY 11590
Phone: 516.280.7675
Fax: 516-280-7674
www.raslegalgroup.com

**James Robertson, Esquire***
**Everett Anschutz, Esquire****
**David J. Schneid, Esquire****
**John T. Crane, Esquire****

* Deceased
**Not Admitted to Practice in New York

July 20, 2021

Hon. Judge William F. Kuntz, II
U.S. District Court – Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

**Re:**  *Veedel D. Wentworth v. Richard D. Femano et al.*
Civ. Case No.: 2:21-cv-03911-WFK-AYS

Dear Honorable Kuntz:

I am General Counsel to Robertson, Anschutz, Schneid, Crane & Partners, PLLC ("RAS") and am appearing on behalf of defendants Ryan Mitola, Esq. and Specialized Loan Servicing LLC ("SLS"). I am requesting a pre-motion conference for the purpose of proceeding with a pre-answer motion to dismiss and for a vexatious litigation filing injunction against the Plaintiff.

The defendant Richard D. Femano is an attorney with Fein, Such & Crane, LLP who signed a foreclosure summons and complaint against the plaintiff herein, Veedel Wentworth ("Plaintiff") in the Supreme Court of the State of New York. A copy of the summons and complaint is annexed hereto as **Exhibit "A"**. RAS substituted as counsel into the foreclosure action and a judgment of foreclosure was entered against Plaintiff. A copy of the judgment of foreclosure is annexed hereto as **Exhibit "B"**.

Thereafter, Plaintiff filed a proceeding in state court seeking to collaterally attack the validity of the judgment of foreclosure. Plaintiff named as defendants in this action his loan servicer SLS, Mr. Femano and several RAS attorneys including Mr. Mitola as defendants. This action was dismissed and Plaintiff continued filing multiple motions. Eventually the state court issued a filing injunction barring Plaintiff from further filings without leave of the court. A copy of the so ordered transcript at which the injunctive relief was granted is annexed hereto as **Exhibit "C"**.

The current action seeks damages for alleged civil rights violations pursuant to 42 USC § 1983 predicated on his dispute as to the validity of the judgment of foreclosure. However, the named defendants are his loan servicer, SLS and two attorneys that were representing his lender in the aforementioned court actions before the state court. In short, the complaint fails to identify or name any defendants that were state or local officials or acting under color of any statute, ordinance, regulation, custom or usage of the State of New York (or any other state for that matter.) Nor does the complaint allege any coherent deprivation of any right, privilege or immunity secured by the Constitution or federal laws.

The complaint filed in this action is nothing more than another thinly veiled collateral attack on a validly issued final judgment of foreclosure issued by the Supreme Court of the State of New York, see Exhibit "B". Plaintiff's history demonstrates that he will simply continue filing motions to vacate and new actions if a filing injunction is not issued by this court.

In light of all of the foregoing, not only does the complaint fail to state a cause of action, but the relief requested is barred by the Rooker-Feldman Doctrine. This case clearly meets all four requirements necessary for the Rooker-Feldman doctrine to apply. It is not disputed that: (1) Plaintiff lost in state court, having suffered a state court foreclosure judgment and the dismissal of his collateral attack filed in state court; (2) Plaintiff complains of injuries caused by that judgment; (3) Plaintiff asks the Court to review the proceedings before the state court; and (4) the state court judgment was issued nearly two years before Plaintiff commenced the present action. Plaintiff is thus effectively inviting a federal court to review and reject the foreclosure judgment against him, which the Court lacks jurisdiction to do under Rooker-Feldman. See In re Wilson, 410 Fed. Appx. 409, 410-11 (2d Cir. 2011); Ashby v. Polinsky, 328 Fed. Appx. 20, 21 (2d Cir. 2009); Chestnut v. Wells Fargo, No. 10-CV-4244, 2011 U.S. Dist. LEXIS 22113, at *7 (E.D.N.Y. Mar. 2, 2011); Kalamas v. Consumer Solutions Reo, LLC, No. 09-CV-5045, 2010 U.S. Dist. LEXIS 123034, at *6 (E.D.N.Y. Nov. 17, 2010).

SLS has also not yet been served with process in this action and intends to also seek dismissal due to the Court's lack of jurisdiction over SLS.

In light of the foregoing, defendant requests leave to file its pre-answer motion to dismiss.

Very truly yours,

Joseph F. Battista, Esq.

Encls.

EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

DEUTSCHE BANK NATIONAL TRUST COMPANY,

Plaintiff,

-vs-

VEEDEL WENTWORTH;"JOHN DOE #1-5" and "JANE
DOE #1-5" said names being fictitious, it being the intention
of Plaintiff to designate any and all occupants, tenants,
persons or corporations, if any, having or claiming an
interest in or lien upon the premises being foreclosed herein,

Defendants.

**SUMMONS**
Index No.

08 -004905

**RECEIVED**

MAR 1 4 2008

**NASSAU COUNTY
COUNTY CLERK'S OFFICE**

| Mortgaged Premises: | 34 AVENUE A |
| | INWOOD , NY 11096 |

TO THE ABOVE NAMED DEFENDANT(S):

YOU ARE HEREBY SUMMONED to answer the Complaint in the above entitled action
and to serve a copy of your Answer on the plaintiff's attorney within twenty (20) days of the
service of this Summons, exclusive of the day of service, or within thirty (30) days after service
of the same is complete where service is made in any manner other than by personal delivery
within the State. The United States of America, if designated as a defendant in this action, may
answer or appear within sixty (60) days of service. Your failure to appear or to answer will result
in a judgment against you by default for the relief demanded in the Complaint. In the event that a
deficiency balance remains from the sale proceeds, a judgment may be entered against you.

**NOTICE**
**YOU ARE IN DANGER OF LOSING YOUR HOME**

If you do not respond to this summons and complaint by serving a copy of the
answer on the attorney for the mortgage company who filed this foreclosure proceeding
against you and filing an answer with the court, a default judgment may be entered and
you can lose your home.

Speak to an attorney or go to the court where your case is pending for further
information on how to answer the summons and protect your property.

Sending a payment to your mortgage company will not stop this foreclosure action.

YOU MUST RESPOND BY SERVING A COPY OF THE ANSWER ON THE ATTORNEY FOR THE PLAINTIFF (MORTGAGE COMPANY) AND FILING THE ANSWER WITH THE COURT.

NASSAU County is designated as the place of trial.  The basis of venue is the location of the mortgaged premises.

Dated: March 13, 2008

RICHARD D. FEMANO, ESQ.
FEIN, SUCH & CRANE, LLP
Attorneys for Plaintiff
747 Chestnut Ridge Road, Suite 200
Chestnut Ridge, New York 10977
Telephone No. (845) 371-4700
FWMN509

# Help for Homeowners in Foreclosure

New York State Law requires that we send you this notice about the foreclosure process. Please read it carefully.

Mortgage foreclosure is a complex process. Some people may approach you about "saving" your home. You should be extremely careful about any such promises.

The state encourages you to become informed about your options in foreclosure. There are government agencies, legal aid entities and other non-for profit organizations that you may contact for information about foreclosure while you are working with your lender during this process.

To locate an entity near you, you may call the toll free helpline maintained by the New York State Banking Department at 1-877-BANK-NYS (1-877-226-5697) or visit the Department's website at www.banking.state.ny.us. The State does not guarantee the advice of these agencies.

Section 1303 Notice

## NATURE AND OBJECT OF ACTION

The object of the above action is to foreclose a Mortgage held by the Plaintiff and recorded in the County of NASSAU, State of New York as more particularly described in the Complaint herein.

TO THE DEFENDANT(S), <u>except</u> VEEDEL WENTWORTH the plaintiff makes no personal claim against you in this action.

TO THE DEFENDANT(S), <u>except</u> VEEDEL WENTWORTH:

IF, AND ONLY IF, you have received or will receive a Bankruptcy Discharge Order which includes this debt, the plaintiff is solely attempting to enforce its mortgage lien rights in the subject real property and makes no personal claim against you. In that event, nothing contained in these or any papers served or filed or to be served or filed in this action will be an attempt to collect from you or to find you personally liable for the discharged debt.

## NOTICE OF RIGHTS

YOU ARE HEREBY PUT ON NOTICE THAT WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

UNLESS YOU DISPUTE THE VALIDITY OF THIS DEBT OR ANY PORTION THEREOF WITHIN THIRTY (30) DAYS AFTER RECEIPT OF THIS NOTICE, WE WILL ASSUME THE DEBT TO BE VALID.

SHOULD YOU DISPUTE THIS DEBT AND NOTIFY US IN WRITING OF THE DISPUTE WITHIN THIRTY (30) DAYS, WE WILL PROVIDE YOU WITH VERIFICATION OF THE OBLIGATION.

UPON YOUR WRITTEN REQUEST WITHIN THE THIRTY (30) DAY PERIOD, WE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR IF DIFFERENT THAN THE CURRENT CREDITOR.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

DEUTSCHE BANK NATIONAL TRUST COMPANY,

Plaintiff,

-vs-

**VERIFIED COMPLAINT**
Index No.

VEEDEL WENTWORTH; "JOHN DOE #1-5" and "JANE DOE #1-5" said names being fictitious, it being the intention of Plaintiff to designate any and all occupants, tenants, persons or corporations, if any, having or claiming an interest in or lien upon the premises being foreclosed herein,

Defendants.

The plaintiff herein, by FEIN, SUCH & CRANE, LLP, its attorneys, complains of the defendants above named, and for its cause of action, alleges:

**FIRST:** The plaintiff, having an address of c/o WASHINGTON MUTUAL BANK, 9541 CORBIN AVENUE, NORTHRIDGE, CA, 91328, is a banking corporation duly licensed, organized and existing pursuant to the laws of the United States of America.

**SECOND:** Upon information and belief, at all times hereinafter mentioned, the defendant(s) reside or conduct business at the address set forth in "Schedule A" annexed hereto (any that are corporations being organized and existing under the laws of the State set forth therein), and are made defendants in this action in the capacities and for the reasons alleged therein.

**THIRD:** That the United States of America, the People of the State of New York, the State Tax Commission of the State of New York, the Industrial Commissioner of the State of New York, and all other agencies or instrumentalities of the Federal, State or local government, however designated, if named as defendants, are made parties solely by reason of the facts set forth in the annexed "Schedule B."

**FOURTH:** That on or about January 1, 1950 the defendant(s) VEEDEL WENTWORTH for monies loaned and for the purpose of securing to plaintiff or plaintiff's predecessor, its successor and assigns, a sum of money, duly executed and acknowledged a certain bond(s) or note(s) whereby they bound themselves, their successors or heirs, executors, administrators and assigns, and each and every one of them, jointly and severally, in the amount of $236,000.00 plus interest at the rate 7.76% and agreed to repay said sums in monthly principal and interest payments on the first day of each and every month.

**FIFTH:** That as security for the payment of said indebtedness, a Mortgage(s) was executed as annexed hereto in "Schedule C," acknowledged and delivered to the stated Lender/Mortgagee, its successors and assigns, wherein the named mortgagor or mortgagors bargained, granted and sold to the mortgagee named therein, its successors and assigns, the premises more particularly described therein (hereinafter, the "Mortgaged Premises") under certain conditions with rights, duties and privileges between the parties as described therein.

**SIXTH:** That Plaintiff has complied with all applicable provisions of the Banking Law, and specifically with Banking Law §§ 595-a and 6-1 if applicable, in securing the aforementioned indebtedness and at all times thereafter.

**SEVENTH:** That said mortgage(s) was duly recorded and the mortgage tax(es) due thereon was duly paid in the County Clerk's Office at the place and time that appears therein.

**EIGHTH:** That the defendant(s), VEEDEL WENTWORTH, has(have) failed to comply with the conditions of the mortgage(s) or bond(s) by failing to pay portions of principal, interest or taxes, assessments, water rates, insurance premiums, escrow and/or other charges, all as more fully described in "Schedule D".

**NINTH:** That plaintiff elects herein to call due the entire amount secured by the mortgage(s) as more than thirty (30) days have elapsed since the date of default.

**TENTH:** That "Schedule D" sets forth the principal balance due and the date and rate from which interest accrued and is owing from the defendant(s) default.

**ELEVENTH:** That in order to protect its security, the plaintiff has paid, if set forth in "Schedule D", or may be compelled to pay during the pendency of this action, local taxes, assessments, water rates, insurance premiums and other charges assessed to the Mortgaged Premises, and hereby requests that any sums paid by it for said purposes, with interest thereon, be added to the sum otherwise due, be deemed secured by the mortgage(s) and be adjudged a valid lien on the Mortgaged Premises.

**TWELFTH:** That the defendants herein have or claim to have some interest in, or lien upon, the Mortgaged Premises or some part thereof, which interest or lien, if any, accrued subsequent to the lien of the plaintiff's mortgage(s).

**THIRTEENTH:** That the plaintiff is now the sole, true and lawful owner of record of the bond(s), note(s) and mortgage(s) securing the Mortgaged Premises, that there have been no prior proceedings, at law or otherwise, to collect or enforce the bond(s), note(s) or mortgage(s) and no such proceedings are currently pending.

**FOURTEENTH:** That Schedules "A", "B", "C", and "D," be incorporated and made part of the Complaint with the same force and effect as if they were completely and fully set forth wherever reference is made to them herein.

**FIFTEENTH:** The plaintiff shall not be deemed to have waived, altered, released or changed its election herein by reason of any payment after the commencement of this action of any or all of the defaults mentioned herein and such election shall continue to be effective.

**WHEREFORE,** plaintiff demands judgment adjudging and decreeing the amounts due it for principal, interest, costs and reasonable attorneys', fees if provided for in the bond(s), note(s) or mortgage(s), and that the defendants, and any persons claiming by, through or under them subsequent to the commencement of this action, and every other person or corporation whose right, title, conveyance or encumbrance of the Mortgaged Premises is subsequent or recorded subsequent to the plaintiff's interest, be forever barred and foreclosed of all right, claim, lien, interest or equity of redemption in and to the Mortgaged Premises; that the Mortgaged Premises, or part thereof, be decreed to be sold according to law as may be necessary to raise the amounts due for principal, interest, costs, allowances and disbursements, together with any monies advanced and paid by the plaintiff; that the plaintiff be paid the amounts due on said bond(s), note(s) and mortgage(s), and any sums paid by the plaintiff to protect the lien of its mortgage(s) out of the proceeds from the sale thereof, with interest thereon from the respective dates of payment thereof, costs and expenses of this action and reasonable attorneys' fees, if provided for in the bond(s), note(s) or mortgage(s), provided the amount of the sale proceeds permits said payment; that any of the parties hereto may purchase the Mortgaged Premises at sale; that this Court, if requested, forthwith appoint a Receiver of the rents and profits of the Mortgaged Premises with the usual powers and duties associated therewith; that the defendants referred to in

paragraph "EIGHTH" be adjudged to pay any remaining deficiency; and such other or further relief as may be just and equitable. The plaintiff hereby reserves its right to share in surplus monies from the sale by virtue of its position as a judgment or other lien creditor, excluding the mortgage(s) foreclosed herein.

Dated: March 13, 2008

RICHARD D. FEMANO, ESQ.
FEIN, SUCH & CRANE, LLP
Attorneys for Plaintiff
747 Chestnut Ridge Road, Suite 200
Chestnut Ridge, New York 10977-6216
Telephone: (845) 371-4700
FWMN509

## SCHEDULE "A" - DEFENDANTS

### DEFENDANTS

### CAPACITY

**VEEDEL WENTWORTH**
34 AVENUE A
INWOOD, NY 11096

PO BOX 670869
BRONX NY 10467

Defendant(s), who executed a certain Mortgage to WASHINGTON MUTUAL BANK, FA, A FEDERAL ASSOCIATION to secure the sum of $236,000.00, which was recorded in the NASSAU County Clerk's Office on March 30, 2005, in Liber 28580 of Mortgages, at Page 154, et seq.  Said Mortgage was assigned by WASHINGTON MUTUAL BANK, FA, A FEDERAL ASSOCIATION  to DEUTSCHE BANK NATIONAL TRUST COMPANY  by Assignment to be recorded.

**JOHN DOE # 1-5**
and JANE DOE # 1-5
34 AVENUE A
INWOOD, NY 11096

Said names being fictitious, it being the intention of Plaintiff to designate any and all occupants, tenants, persons or corporations, if any, having or claiming an interest in or lien upon the premises being foreclosed herein.

SCHEDULE "B"

-NONE-

SCHEDULE "C"



## NASSAU COUNTY CLERK'S OFFICE
### ENDORSEMENT COVER PAGE

Recorded Date: 03-30-2005
Recorded Time: 2:49:05 p

Liber Book: M 28580
Pages From:        154
        To:        182

Control
Number: 2323
Ref #: CV  138254
Doc Type: M51  NEGATIVE AMORTIZATION -1

Record and Return To:
WASHINGTON MUTUAL BANK FA
C/O  ACS IMAGE SOLUTIONS
12691 PALA DRIVE MS156DPCA
GARDEN GROVE, CA  92841

Location:                Section Block    Lot    Unit
HEMPSTEAD (2820)         0040    00157-00 00008
HEMPSTEAD (2820)         0040    00157-00 00008

Consideration Amount:      236,000.00

Taxes Total          2,571.00
Recording Totals       122.00
LBS001                    Total Payment      2,693.00

THIS PAGE IS NOW PART OF THE INSTRUMENT AND SHOULD NOT BE REMOVED
KAREN V. MURPHY
COUNTY CLERK



2005033002323

**AFTER RECORDING RETURN TO:**

Washington Mutual Bank, FA
C/O ACS IMAGE SOLUTIONS
12691 PALA DRIVE MS156DPCA
GARDEN GROVE, CA 92841

DOCUMENT
RECEIVED IN
THIS CONDITION

SPACE ABOVE THIS LINE FOR RECORDING DATA  AUI-905N  29

FIDELITY NATIONAL TITLE INSURANCE AUI0905N

# MORTGAGE

03-2403-067531997-4

## WORDS USED OFTEN IN THIS DOCUMENT

(A) "Security Instrument." This document, which is dated _____ June 1, 2004 _____, together with all Riders to this document, will be called the "Security Instrument."

(B) "Borrower." _____ VERDEL WENTWORTH _____

whose address is _____ 14 AVENUE A, INWOOD, NY 11096 _____ sometimes will be called "Borrower" and sometimes simply "I" or "me."

(C) "Lender." _____ Washington Mutual Bank, FA, a federal association _____ will be called "Lender." Lender is a corporation or association which exists under the laws of _____ United States of America _____. Lender's address is _____ 400 East Main Street Stockton, CA 95290 _____

(D) "Note." The note signed by Borrower and dated _____ June 1, 2004 _____, will be called the "Note." The Note shows that I owe Lender Two Hundred Thirty-Six Thousand & no/100

Dollars (U.S. 236,000.00 _____ ) plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by _____ July 1, 2034 _____.

(E) "Property." The property that is described below in the section titled "Description of the Property," will be called the "Property."

(F) "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

(H) "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower (check box as applicable):

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [X] 1-4 Family Rider |
| [ ] Graduated Payment Rider | [ ] Planned Unit Development Rider | [ ] Biweekly Payment Rider |
| [ ] Balloon Rider | [ ] Rate Improvement Rider | [ ] Second Home Rider |
| [ ] Other(s) [specify] | | |

NEW YORK
73224-01-01

TO BE RECORDED

V.W.

03-2403-067531997-4

(I) "Applicable Law." All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

(J) "Community Association Dues, Fees, and Assessments." All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments".

(K) "Electronic Funds Transfer." "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items." Those items that are described in Section 3 will be called "Escrow Items."

(M) "Miscellaneous Proceeds." "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds, whether by way of judgment, settlement or otherwise, paid by any third party (other than insurance proceeds paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation or sale to avoid condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

(N) "Mortgage Insurance." "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment." The regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 will be called "Periodic Payment."

(P) "RESPA." "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Subsection 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3600), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to Lender subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

VW.

03-2103-067531997-4

**DESCRIPTION OF THE PROPERTY**

I give Lender rights in the Property described in (A) through (G) below:

(A) The Property which is located at ` 34 AVENUE A` _____. [Street]

_____ INWOOD _____, New York __ 11096 ___ . .
[City, Town or Village]                                          [Zip Code]
This Property is in __Nassau__ . _____ County. It has the following legal
description:

TBD

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all proceeds of insurance for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

V.W.

03-2403-067531997-4

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

## COVENANTS

I promise and I agree with Lender as follows:

1. **Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note.
I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

2. **Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:
First, to pay any interest due under the Note;
Next, to pay principal due under the Note; and
Next, to pay the amounts due Lender under Section 3 of this Security Instrument.
Such payments will be applied to each Periodic Payment in the order in which it became due. Any remaining amounts will be applied as follows:
First, to pay any late charges;
Next, to pay any other amounts due under this Security Instrument; and
Next, to reduce the principal balance of the Note.

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any

NEW YORK
73234 (02-01)

Page 4 of 19

TO BE RECORDED



**ABSTRACTS UNLIMITED, INC.**
Agents for
**FIDELITY NATIONAL TITLE INSURANCE COMPANY OF NEW YORK**

Title No.: 2004-AUI-0905N

All that certain plot, piece or parcel of land situate, lying and being in the Inwood, Town of Hempstead, County of Hempstead, County of Nassau and State of New York, more particularly bounded and described as follows:

BEGINNING at a point on the easterly side of Avenue A at the intersection of the southwest corner of land of Lydia Nowker distant 79.06 feet southerly from the corner formed by the intersection of the southerly side of Grand Central Avenue with the easterly side of Avenue A;

RUNNING THENCE southerly along the easterly side of Avenue A 45.94 feet more or less to the northwest corner of land now or formed fo Elmer Jackson;

THENCE along the northerly line of the land now or formed of Elmer Jackson on a course NORTH 83 degrees 21 minutes 40 seconds east 125.29 feet to the westerly line of land now or formerly of Rhinehart;

THENCE along the westerly line of land now or formerly of Rhinehart on a course NORTH 7 degrees 27 minutes West 46.79 feet to the land of Lydia Bowker;

THENCE along the southerly line of Lydia Bowker on a course south 83 degrees 25 minutes 40 seconds west 116.11 feet to the easterly side of Avenue A, the point or place of BEGINNING.

FOR INFORMATION ONLY:   Section   40   Block   157   Lot 8

RECEIVED IN
THIS CONDITION

V.W.

03-2603-067531997-4

late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments for Taxes and Insurance.**

(a) Borrower's Obligations.  I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a loss reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise.  I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Funds." I will pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay Lender Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender.  Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid.  Lender will estimate from time to time the amount of Funds I will have to pay by using

03-2403-067531997-4

existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Funds in an amount sufficient to permit Lender to apply the Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b) Lender's Obligations. Lender will keep the Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Funds. Lender will use the Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law, Lender will give to me, without charge, an annual accounting of the Funds. That accounting will show all additions to and deductions from the Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Funds, for using the Funds to pay Escrow Items, for making a yearly analysis of my payment of Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Funds; or (2) Applicable Law requires Lender to pay interest on the Funds.

(c) Adjustments to the Funds. Under Applicable Law, there is a limit on the amount of Funds Lender may hold. If the amount of Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Funds.

If, at any time, Lender has not received enough Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than twelve.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Funds that are then being held by Lender.

4. Borrower's Obligation to Pay Charges, Assessments and Claims. I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other lien an agreement, approved in writing

VN.

03-3403-067531997-4

by Lender, that the lien of this Security Instrument is superior to the lien held by that person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give Borrower a notice identifying the superior lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance. I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Lender may purchase such insurance from or through any company acceptable to Lender including, without limitation, an affiliate of Lender, and Borrower acknowledges and agrees that Lender's affiliate may receive consideration for such purchase. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard, or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. Borrower hereby absolutely and irrevocably assigns to Lender all of Borrower's right, title and interest in and to all proceeds from any insurance policy (whether or not the insurance policy was required by Lender) that are due, paid or payable with respect to any damage to such property, regardless of whether the insurance policy is established before, on or after the date of this Security Instrument. By absolutely and irrevocably assigning to Lender all of Borrower's rights to receive any and all proceeds from any insurance policy, Borrower hereby

03-2403-067531997-4

waives, to the full extent allowed by law, all of Borrower's rights to receive any and all such insurance proceeds.

Borrower hereby absolutely and irrevocably assigns to Lender all of Borrower's right, title and interest in and to (a) any and all claims, present and future, known or unknown, absolute or contingent, (b) any and all causes of action, (c) any and all judgments and settlements (whether through litigation, mediation, arbitration or otherwise), (d) any and all funds sought against or from any party or parties whosoever, and (e) any and all funds received or receivable in connection with any damage to such property, resulting from any cause or causes whatsoever, including but not limited to, land subsidence, landslide, windstorm, earthquake, fire, flood or any other cause.

Borrower agrees to execute, acknowledge if requested, and deliver to Lender, and/or upon notice from Lender shall request any insurance agency or company that has issued any insurance policy to execute and deliver to Lender, any additional instruments or documents requested by Lender from time to time to evidence Borrower's absolute and irrevocable assignments set forth in this paragraph.

The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a standard mortgage clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "proceeds." Unless Lender and I otherwise agree in writing, any proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such insurance proceeds will be applied in the order provided for in Section 2. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any insurance proceeds in an amount not greater than the amounts unpaid under the Note and this

VW.

03-2403-067531997-4

Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Borrower's Obligations to Occupy The Property. I will occupy the Property and use the Property as my principal residence within sixty days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

7. Borrower's Obligations to Maintain and Protect The Property And to Fulfill Any Lease Obligations.

(a) Maintenance and Protection of the Property. I will not destroy, damage or harm the Property, or remove or demolish any building thereon, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good condition and repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property in good and workmanlike manner if damaged to avoid further deterioration or damage. Lender shall, unless otherwise agreed in writing between Lender and Borrower, have the right to hold insurance or condemnation proceeds. If insurance or condemnation (as described in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or condemnation of, the Property. I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration. Lender does not make any warranty or representation regarding, and assumes no responsibility for, the work done on the Property, and Borrower shall not have any right to rely in any way on any inspection(s) by or for Lender or its agent. Borrower shall be solely responsible for determining that the work is done in a good, thorough, efficient, and workmanlike manner in accordance with all applicable laws.

(b) Lender's Inspection of Property. Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

Borrower shall (a) appear in and defend any action or proceeding purporting to affect the security hereof, the Property or the rights or powers of Lender; (b) at Lender's option, assign to Lender, to the extent of Lender's interest, any claims, demands, or causes of action of any kind, and any award, court judgement, or proceeds of settlement of any such claim, demand or cause of action of any kind which Borrower now has or may hereafter acquire arising out of or relating to to any interest in the acquisition or ownership of the Property. Lender shall not have any duty to prosecute any such claim, demand or cause of action. Without limiting the foregoing, any such claim, demand or cause of action arising out of or relating to any interest in the acquisition or

NEW YORK
73234 (02-01)

Page 5 of 19

TO BE RECORDED

V.W.

ownership of the Property may include (i) any such injury or damage to the Property including without limit injury or damage to any structure or improvement situated thereon, (ii) or any claim or cause of action in favor of Borrower which arises out of the transaction financed in whole or in part by the making of the loan secured hereby, (iii) any claim or cause of action in favor of Borrower (except for bodily injury) which arises as a result of any negligent or improper construction, installation or repair of the Property including without limit, any surface or subsurface thereof, or of any building or structure thereon or (iv) any proceeds of insurance, whether or not required by Lender, payable as a result of any damage to or otherwise relating to the Property or any interest therein. Lender may apply, use or release such monies so received by it in the same manner as provided in Paragraph 5 for the proceeds of insurance.

8. **Borrower's Loan Application.** If, during the application process for the Loan, I, or any person or entity acting at my direction or with my knowledge or consent, made false, misleading or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading or inaccurate statement of important information.

9. **Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for condemnation or forfeiture, proceedings which could give a person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "fee title") to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the

V.W.

01-2403-067531997-6

Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the costs of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "loss reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The loss reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the loss reserve. Lender can no longer require loss reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the loss reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until (termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the loss reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance form time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to require and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

V.W.

03-2403-067511997-4

**11. Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I otherwise agree in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date the Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has require Immediate Payment

NEW YORK
73234 (02-01)                          Page 12 of 19                          **TO BE RECORDED**

V.W.

03-2403-067531997-4

in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction in Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.** This Security Instrument cannot be changed or modified except as otherwise provided herein or by agreement in writing signed by Borrower, or any successor in interest to Borrower and Lender.

(a) **Borrower's Obligations.** Lender may allow me, or a person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

. (b) **Lender's Rights.** Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument. No waiver by Lender of any right under this Security Instrument shall be effective unless in writing. Waiver by Lender of any right granted to Lender under this Security Instrument or of any provision of this Security Instrument as to any transaction or occurrence shall not be deemed a waiver as to any future transaction or occurrence.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

V.W.

03-2403-067531997-6

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Borrower shall pay such other charges as Lender may deem reasonable for services rendered by Lender and furnished at the request for Borrower, any successor in interest to Borrower or any agent of Borrower. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be made in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not effect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

V.W.

03-2403-067531997-4

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights if the Property is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will be on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if immediate payment in full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if immediate payment in full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable



03-2403-067531997-4

Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take correction action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

21. **Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or other trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I will also not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any

NEW YORK
73234 (02-01)

Page 16 of 19

TO BE RECORDED

03-2403-067531997-4

Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

## NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

22. Lender's Rights If Borrower Fails to Keep Promises and Agreements. Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

If Borrower or any successor in interest to Borrower files (or has filed against Borrower or any successor in interest to Borrower) a bankruptcy petition under Title II or any successor title of the United States Code which provides for the curing of prepetition default due on the Note, interest at a rate determined by the Court shall be paid to Lender on post-petition arrears.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date must be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

VW.

03-2403-067531997-4

(c) I do not correct the default stated in the notice from Lender by the date stated in the notice.

23. **Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is permitted by Applicable Law.

24. **Agreements About New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. **Borrower's Statement Regarding the Property** (check box as applicable).

[X] This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

[ ] This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

[ ] This Security Instrument does not cover real property improved as described above.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 19 of this Security Instrument and in any Rider signed by me and recorded with it.

NEW YORK
73234 (02-01)

Page 18 of 19

TO BE RECORDED

$\sqrt{h}$.

03-2403-067531997-4

x _Veedel Wentworth_

VEEDEL WENTWORTH

- - -- (Space Below This Line For Acknowledgment)

STATE OF NEW YORK,

County of Richmond          ) ss:

On the 1 day of June in the year 2004 before me, the undersigned personally appeared Veedel Weatworth
personally known to me or proved to me on the basis of satisfactory evidence to be individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.

Signature and Office of Individual
taking acknowledgment

Marie Renelle
Notary Public, State of New York
No. 01RE6075307
Qualified in Richmond County
Commission Expires 6/03/06

NEW YORK
73234 (02-01)

Page 18 of 19

TO BE RECORDED

V.W.

**ADJUSTABLE RATE RIDER**
(12-MTA Index - Payment and Rate Caps)

03-2403-067531997-6

THIS ADJUSTABLE RATE RIDER is made this ___1st___ day of ___June, 2004___,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of
Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned
(the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
___Washington Mutual Bank, FA___ (the "Lender") of the same date and
covering the property described in the Security Instrument and located at:

___34 AVENUE A, INWOOD, NY 11096___
(Property Address)

THIS RIDER CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST
RATE AND MY MONTHLY PAYMENT. MY MONTHLY PAYMENT INCREASES WILL
HAVE LIMITS WHICH COULD RESULT IN THE PRINCIPAL AMOUNT I MUST REPAY
BEING LARGER THAN THE AMOUNT I ORIGINALLY BORROWED, BUT NOT MORE
THAN ___110%___ OF THE ORIGINAL AMOUNT (OR $___259,500.00___).
MY INTEREST RATE CAN NEVER EXCEED THE LIMIT STATED IN THE NOTE AND
RIDER. A BALLOON PAYMENT MAY BE DUE AT MATURITY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
Interest will be charged on unpaid Principal until the full amount of Principal has been paid.
Up until the first day of the calendar month that immediately precedes the first payment due date
set forth in Section 3 of the Note, I will pay interest at a yearly rate of ___4.125___ %. Thereafter
until the first Change Date (as defined in Section 4 of the Note) I will pay interest at a yearly rate
of ___1.250___ %. The interest rate I will pay will thereafter change in accordance with Section 4
of the Note.
Section 4 of the Note provides for changes in the interest rate and monthly payment as
follows:

03-2403-067531997-4

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the _____1st_____ day of _____August, 2004_____, and on that day every month thereafter. Each such day is called a "Change Date".

**(B) The Index**

On each Change Date, my interest rate will be based on an Index. The "Index" is the Twelve-Month Average, determined as set forth below, of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.

The most recent Index figure available as of the date 15 days before each Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new Index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Interest Rate Change**

Before each Change Date, the Note Holder will calculate my new interest rate by adding _____Two & Nine-Tenths_____ percentage points _2.900_ % ("Margin") to Current Index. The Note Holder will then round the result of this addition to the nearest one thousandth of one percentage point (0.001%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. In the event a new Index is selected, pursuant to paragraph 4(B), a new Margin will be determined. The new Margin will be the difference between the average of the old Index for the most recent three year period which ends on the last date the Index was available plus the Margin on the last date the old Index was available and the average of the new Index for the most recent three year period which ends on that date (or if not available for such three year period, for such time as it is available). The difference will be rounded to the next higher 1/8 of 1%.

**(D) Interest Rate Limit**

My interest rate will never be greater than _9.950_ % ("Cap"), except that following any sale or transfer of the property which secures repayment of this Note after the first interest rate Change Date, the maximum interest rate will be the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of such sale or transfer.

**(E) Payment Change Dates**

Effective every year commencing _____August 1, 2005_____, and on the same date each twelfth month thereafter ("Payment Change Date"), the Note Holder will determine the

V.W.

03-2403-067531997-4

amount of the monthly payment that would be sufficient to repay the projected Principal balance I am expected to owe as of the Payment Change Date in full on the maturity date at the interest rate in effect 45 days prior to the Payment Change Date in substantially equal payments. The result of this calculation is the new amount of my monthly payment, subject to Section 4(F) below, and I will make payments in the new amount until the next Payment Change Date unless my payments are changed earlier under Section 4(H) of the Note.

(F) Monthly Payment Limitations

Unless Section 4(H) and 4(I) below apply, the amount of my new monthly payment, beginning with a Payment Change Date, will be limited to 7 1/2% more or less than the amount I have been paying. This payment cap applies only to the Principal Payment and does not apply to any escrow payments Lender may require under the Security Instrument.

(G) Changes In My Unpaid Principal Due to Negative Amortization or Accelerated Amortization

Since my payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 4(F), my monthly payment could be less or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the maturity date in substantially equal payments. For each month that the monthly payment is less than the interest portion, the Note Holder will subtract the monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the current interest rate. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the excess towards a Principal reduction of the Note.

(H) Limit on My Unpaid Principal; Increased Monthly Payment

My unpaid Principal can never exceed a maximum amount equal to ___110%___ of the principal amount original borrowed. In the event my unpaid Principal would otherwise exceed that ___110%___ limitation, I will begin paying a new monthly payment until the next Payment Change Date notwithstanding the 7 1/2% annual payment increase limitation. The new monthly payment will be an amount which would be sufficient to repay my then unpaid principal in full on the maturity date at my interest rate in effect the month prior to the payment due date in substantially equal payments.

(I) Required Full Monthly Payment

On the ___FIFTH___ anniversary of the due date of the first monthly payment, and on that same day every ___FIFTH___ year thereafter, the monthly payment will be adjusted without regard to the payment cap limitation in Section 4(F).

(J) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in the amount of my

V.W.

03-2403-067531997-4

monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any questions I may have regarding the notice.

(K) Failure to Make Adjustments

If for any reason Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold Note Holder responsible for any damages to me which may result from Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial prepayment of unpaid "Principal."

## B.  TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Section 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement , the intent of which is the transfer of title by Borrower at a future date to a purchaser. If all or any part of the Property or any interest in the Property is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Agreement or other obligations related to the Note or other loan document is acceptable to Lender, (d) Assuming party executes Assumption Agreement acceptable to Lender at its sole choice and discretion, which Agreement may include an increase to Cap as set forth below and (d) payment of Assumption Fee if requested by Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption, and Lender may increase the maximum interest rate limit to the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of the transfer. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the

03-2403-067531997-4

transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has entered into a written assumption agreement with transferee and formally releases Borrower.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider. Borrower agrees to execute any document necessary to reform this Agreement to accurately reflect the terms of the Agreement between Borrower and Beneficiary or if the original Note, Trust Deed or other document is lost, mutilated or destroyed.

x _Veedel Wentworth_

VEEDEL WENTWORTH

V.W

## 1-4 FAMILY RIDER
### Assignment of Rents

03-2403-067531997-6

THIS 1-4 FAMILY RIDER is made this ___1st___ day of _____June, 2004_____, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to _____Washington Mutual Bank, FA_____ (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

34 AVENUE A, INWOOD, NY 11096
(Property Address)

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT. In addition to the Property described in the Security Instrument, the following items now and hereafter attached to the Property to the extent they are fixtures added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

B. USE OF PROPERTY; COMPLIANCE WITH LAW. Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classifications, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

C. SUBORDINATE LIENS. Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

986 d2 01)                    Page 1 of 3                    TO BE RECORDED

V.W.

03-2403-067531997-4

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, the Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this Paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.**
Borrowers absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents consitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property, (iii)Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv)unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v)Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

V.W.

03-2403-067531997-4

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender  This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.**

Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

X _Veedel Wentworth_

**VEEDEL WENTWORTH**

866 (02 01)                          Page 3 of 3                          TO BE RECORDED

V.W.

SCHEDULE "D"

Principal Balance as of
Date of Default: December 1, 2007                    $252,592.79

Interest at 7.763% per annum
($53.72 per diem) through March 13, 2008             $7,198.48

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
_____

DEUTSCHE BANK NATIONAL TRUST COMPANY,

                              Plaintiff,

              -vs-                                    **ATTORNEY
                                                      VERIFICATION**
VEEDEL WENTWORTH;"JOHN DOE #1-5" and "JANE            Index No.
DOE #1-5" said names being fictitious, it being the intention
of Plaintiff to designate all occupants, tenants, persons or
corporations,having or claiming an interest in or lien upon
the premises being foreclosed herein,

                              Defendants.
_____

STATE OF NEW YORK      )
COUNTY OF ROCKLAND ) ss:

        I, the undersigned, an attorney admitted to practice in the courts of the State of New

York, affirm the following to be true under penalty of perjury:

        I am an attorney in the law firm of Fein, Such & Crane, LLP, attorneys of record for the

plaintiff.  As such, I am familiar with the within action, have read the annexed Summons and

Complaint and know the contents thereof to be true to the best of my knowledge, except those

matters therein which are stated to be alleged on information and belief, and as to those matters, I

believe them to be true.  My belief as to those matters stated to be alleged on information and

belief is based upon the following:  correspondence, memoranda and statements of account in

affirmant's possession.

        I make this verification on the Plaintiff's behalf because the Plaintiff is a corporation,

none of whose officers are presently within the county where my office is located.

Dated: March 13, 2008                    _____

                                         RICHARD D. FEMANO, ESQ.

ALL-STATE LEGAL
(07)0)-BF-07103-BL #07103-GY • 07104-WH
800.222.0510 www.aslegal.com

Index No.
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

DEUTSCHE BANK NATIONAL TRUST COMPANY
                    Plaintiff,

-vs-

VEEDEL WENTWORTH, et. al.
                    Defendants.

## SUMMONS & COMPLAINT

### FEIN, SUCH & CRANE, LLP

Attorneys for Plaintiff

747 CHESTNUT RIDGE ROAD, SUITE 200
CHESTNUT RIDGE, NEW YORK 10977-6216
845-371-4700

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that upon information and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.

Dated: March 13, 2008

Service of a copy of the within
Dated:                                                          is hereby admitted.

                                        ...........................................................
                                        Attorneys(s) for

PLEASE TAKE NOTICE

☐ that the within a (certified) true copy of a
   entered in the office of the clerk of the within named Court on                                    20

☐ that an Order of which the within is a true copy will be presented for settlement to the
   Hon.                                        one of the judges of the within named Court,
   at
   on                    20      , at                    M.
Dated:

                                        FEIN, SUCH & CRANE, LLP
                                        Attorneys for Plaintiff
                                        747 CHESTNUT RIDGE ROAD, SUITE 200
                                        CHESTNUT RIDGE, NEW YORK 10977-6216
                                        845-371-4700

ALL-STATE LEGAL
07101-BF•07103-BL •07103-GY • 07104-WH
800.222.0510  www.aslegal.com

Index No.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

DEUTSCHE BANK NATIONAL TRUST COMPANY
                              Plaintiff,

-vs-

VEEDEL WENTWORTH, et. al.
                              Defendants.

NOTICE OF PENDENCY

Attorneys for Plaintiff

**FEIN, SUCH & CRANE, LLP**

747 CHESTNUT RIDGE ROAD, SUITE 200
CHESTNUT RIDGE, NEW YORK 10977-6216
845-371-4700

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that upon information and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.

Dated: March 13, 2008

Service of a copy of the within
Dated:                                                            is hereby admitted.

                                                      ...................................................................
                                                      Attorneys(s) for

PLEASE TAKE NOTICE

☐ that the within a (certified) true copy of a
   entered in the office of the clerk of the within named Court on                    20

☐ that an Order of which the within is a true copy will be presented for settlement to the
   Hon.                                        one of the judges of the within named Court,
   at
   on                              20      , at                    M.
Dated:

                                        **FEIN, SUCH & CRANE, LLP**
                                        Attorneys for Plaintiff
                                        747 CHESTNUT RIDGE ROAD, SUITE 200
                                        CHESTNUT RIDGE, NEW YORK 10977-6216
                                        845-371-4700

# EXHIBIT B



**Nassau County**
**Maureen OConnell**
**County Clerk**
**Mineola, NY 11501**

61 2019 00186058

Ref ID#: IN 08--004905               Instrument Number: 2019- 00186058
                                            As
                           J60 - JUDGMENT FORECLOSURE & SALE

Recorded On:  September 18, 2019
Parties:  DEUTSCHE BANK NATIONAL TRUST CO (TRU)
   TO  VEEDEL WENTWORTH                           Num Of Pages: 16
Recorded By:  RAS BORISKIN                        Comment:

** Examined and Charged as Follows: **

J60 - JUDGMENT FORECLOSURE          0.00
      Recording Charge:          0.00

** THIS PAGE IS PART OF THE INSTRUMENT **

I hereby certify that the within and foregoing was recorded in the Clerk's Office For:  Nassau County, NY

**File Information:**                       **Record and Return To:**
   Document Number:  2019- 00186058
   Receipt Number:  1614327
   Recorded Date/Time:  September 18, 2019 10:54:02A
   Book-Vol/Pg:  Bk-J Vl-4455 Pg-230
   Cashier / Station:  0 BMP  /  NCCL-CCQ4FP1



*Maureen O'Connell*

**County Clerk Maureen O'Connell**

At Part _11_ of the Supreme Court of the State of
New York, held in and for the County of NASSAU
at the Courthouse thereof, 100 SURPEME COURT
DRIVE, MINEOLA, NY, 11501 on the _____ day
of _____, 2019.

P R E S E N T: Honorable Ute Wolff Lally Jno. J.S.C.

HON. THOMAS A. ADAMS

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
--------------------------------------------------------------X

DEUTSCHE BANK NATIONAL TRUST
COMPANY AS TRUSTEE FOR HARBORVIEW
MORTGAGE LOAN TRUST 2005-9,

                                        Plaintiff,

                -against-

VEEDEL WENTWORTH, PATRICIA THOMAS;
KEYANNA BOSTICK; NICOLE BOSTICK,
JACQUELINE WALKER

                                        Defendants.
--------------------------------------------------------------X

INDEX NO.: 004905/2008

**ORDER CONFIRMING REFEREE
REPORT AND JUDGMENT OF
FORECLOSURE AND SALE**

MORTGAGED PROPERTY: 34 AVE A
INWOOD, NY 11096

COUNTY: NASSAU

SBL#: Section 40, Block 157, Lot 8

UPON the Summons, Complaint and Notice of Pendency filed in this action on March
14, 2008, the Notice of Motion dated May 13, 2019, the affirmation of Matthew Rothstein, Esq.
the affidavit of merit and amount due by Cynthia Wallace who is Second Assistant Vice
President of SPECIALIZED LOAN SERVICING, LLC, duly sworn to on October 18, 2018;
together with the exhibits attached thereto, all in support of Plaintiff's motion for a Judgment of
Foreclosure and Sale; and

16-240953 - DaR

UPON proof that each of the Defendants herein have been duly served with the Summons and Complaint in this action, and has voluntarily appeared either personally or by their respective attorneys or have not served any answer to the Complaint or otherwise appeared, nor had their time to so do extended; and it appearing that more than the legally required number of days had elapsed since said Defendants PATRICIA THOMAS, KEYANNA BOSTICK, NICOLE BOSTICK and JACQUELINE WALKER were so served and/or appeared; and Plaintiff having established to the court's satisfaction that judgment against the defendants is warranted;

UPON the affidavit of mailing reflecting compliance with CPLR 3215(g)(3)(iii); and

UPON proof that non-appearing defendants PATRICIA THOMAS, KEYANNA BOSTICK, NICOLE BOSTICK and JACQUELINE WALKER are not absent, in accordance with RPAPL §1321(2);

A Referee having been appointed to compute the amount due to the Plaintiff upon the bond/note and mortgage set forth in the Complaint, and to examine whether the mortgaged property can be sold in parcels; and

UPON reading and filing the Report of Jane P. Shrenkel, Esq., dated November 30, 2018, showing the sum of $420,374.24 due as of October 02, 2018 of said Report and that the mortgaged property cannot be sold in parcels; and

UPON proof of due notice of this application upon all parties entitled to receive same, and upon all of the prior proceedings and papers filed herein; and

16-240953 - DaR

ORDERED that the motion is granted; without opposition and it is further

ORDERED, ADJUDGED AND DECREED that the Referee's Report be, and the same is, hereby in all respects ratified and confirmed; and it is further

ORDERED, ADJUDGED AND DECREED that the mortgaged property described in the Complaint in this action and as hereafter described, or such part thereof as may be sufficient to discharge the mortgage debt, the expenses of the sale, and the costs of this action as provided by the RPAPL be sold, within 90 days from the date of this Judgment, in one parcel, at public auction at the _____ Calendar Control Part (CCP) Courtroom of the Supreme Court, 100 Supreme Court Drive, _____ by and Mineola, N.Y. 11501 on a Tuesday at 11:30 under the direction of am Jane P. Shrenkel, Esq., who is hereby appointed Referee for that purpose; that said Referee give public notice of the time and place of sale in accordance with RPAPL §231 in _____ NASSAU HERALD 2 ENDO BLVD GARDEN CITY _____; and it is further

ORDERED, ADJUDGED AND DECREED that by accepting this appointment the Referee certifies that he/she is in compliance with Part 36 of the Rules of the Chief Judge (22 NYCRR Part 36), including, but not limited to §36.2(c) ("Disqualifications from appointment"), and §36.2(d) ("Limitations on appointments based upon compensation"); and, if the Referee is disqualified from receiving an appointment pursuant to the provisions of that Rule, the Referee shall immediately notify the Appointing Judge; and it is further

16-240953 - DaR

ORDERED, ADJUDGED AND DECREED that the Referee is prohibited from accepting or retaining any funds for him/herself or paying funds to him/herself without compliance with Part 36 of the Rules of the Chief Administrative Judge; and it is further

ORDERED, ADJUDGED AND DECREED that the Referee shall conduct the foreclosure sale only if Plaintiff, its successors and/or assignees, or its representative is present at the sale; and it is further

ORDERED, ADJUDGED AND DECREED that if the Referee does not conduct the sale within 90 days of the date of the judgment, in accordance with CPLR 2004, the time fixed by RPAPL §1351(1) is extended for the Referee to conduct the sale as soon as reasonably practicable; and it is further

ORDERED, ADJUDGED AND DECREED that the Referee shall accept the highest bid offered by a bidder who shall be identified upon the court record, and shall require that the successful bidder immediately execute Terms of Sale for the purchase of the property, and pay to the Referee, in cash or certified or bank check, ten percent (10%) of the sum bid, unless the successful bidder is the Plaintiff in which case no deposit against the purchase price shall be required; and it is further

ORDERED, ADJUDGED AND DECREED that in the event the first successful bidder fails to execute the Terms of Sale immediately following the bidding upon the subject property or fails to immediately pay the ten percent (10%) deposit as required, the property shall be reoffered at auction; and it is further

16-240953 - DaR

ORDERED, ADJUDGED AND DECREED that the Referee shall then deposit the down

payment and proceeds of sale, as necessary, in _____ First National Bank
1050 Franklin Avenue #100
Garden City, N.Y. 11530

Or in an IOLA
in his/her own name as Referee, in accordance with CPLR 2609; and it is further account per CPLR 2609

ORDERED, ADJUDGED AND DECREED that after the property is sold the Referee

shall execute a deed to the purchaser, in accordance with RPAPL §1353 and the terms of sale,

which shall be deemed a binding contract; and it is further

ORDERED, ADJUDGED AND DECREED that in the event a party other than the

Plaintiff becomes the purchaser at the sale, the closing of title shall be had thirty (30) days after

the date of such sale unless otherwise stipulated by all parties to the sale; and it is further

ORDERED, ADJUDGED, AND DECREED that if the Plaintiff (or its affiliate, as

defined in paragraph (a) of subdivision 1 of section six-l of the Banking Law) is the purchaser,

such party shall place the property back on the market for sale or other occupancy: (a) within one

hundred eighty (180) days of the execution of the deed of sale, or (b) within ninety (90) days of

completion of construction, renovation, or rehabilitation of the property, provided that such

construction, renovation, or rehabilitation proceeded diligently to completion, whichever comes

first, provided however, a court of competent jurisdiction may grant an extension for good cause;

and it is further

ORDERED, ADJUDGED, AND DECREED that the Referee, on receiving the proceeds

of such sale, shall forthwith pay therefrom, in accordance with their priority according to law, all

taxes, assessments, sewer rents, or water rates, which are, or may become, liens on the property

16-240953 - DaR

at the time of sale, with such interest or penalties which may have lawfully accrued thereon to the date of payment; and it is further

ORDERED, ADJUDGED, AND DECREED, that the Referee then deposit the balance of said proceeds of sale ~~in her/his own name as Referee in~~ _____, and shall thereafter make the following payments in accordance with RPAPL §1354, as follows:

FIRST: The Referee's statutory fees for conducting the sale, in accordance with CPLR 8003(b), in the sum of $ _750.00_ ~~in the event a sale was canceled or postponed, Plaintiff shall compensate the Referee in the sum of $_____ for each adjournment or cancellation, unless the Referee caused the delay;~~

SECOND: All taxes, assessments and water rates that are liens upon the property and monies necessary to redeem the property from any sales for unpaid taxes, assessments, or water rates that have not apparently become absolute, and any other amounts due in accordance with RPAPL §1354(2).  Purchaser shall be responsible for interest and penalties due on any real property taxes accruing after the sale.  The Referee shall not be held responsible for the payment of penalties or fees pursuant to this appointment. The Purchaser shall hold the Referee harmless from any such penalties or fees assessed;

16-240953 - DaR

THIRD: The expenses of the sale and the advertising expenses as shown on the bills presented and certified by said Referee to be correct, duplicate copies of which shall be annexed to the report of sale;

FOURTH: The Referee shall then pay to the Plaintiff or its attorney the following:

Amount Due per Referee's Report: $420,374.24 with interest at the note rate from July 01, 2008, together with any advances together with any advances as provided for in the note and mortgage which Plaintiff has made for taxes, insurance, principal, and interest, and any other charges due to prior mortgages or to maintain the property pending consummation of this foreclosure sale, not previously included in the computation, upon presentation of receipts for said expenditures to the Referee, all together with interest thereon pursuant to the note and mortgage, and then with interest from the date of entry of this judgment at the statutory rate until the date the deed is transferred;

Costs and Disbursements: $ _25 _20.00___ adjudged to the Plaintiff for costs and disbursements in this action, with interest at the statutory judgment rate from the date of entry of this judgment;

Additional Allowance: $ _300.00___ is hereby awarded to the Plaintiff in addition to costs, with interest at the statutory judgment rate from the date of entry of this judgment, pursuant to CPLR Article 83;

16-240953 - DaR

Attorney Fees: $ 2,500.W_____ is hereby awarded to the Plaintiff as reasonable legal fees herein, with interest at the statutory rate from the date of entry of this judgment;

FIFTH: Surplus monies arising from the sale shall be paid into court by the officer conducting the sale within five days after receipt in accordance with RPAPL §1354(4) and in accordance with local County rules regarding Surplus Monies; and it is further

ORDERED, ADJUDGED AND DECREED that if the Plaintiff is the purchaser of the property, or in the event that the rights of the purchasers at such sale and the terms of sale under this judgment shall be assigned to and be acquired by the Plaintiff, and a valid assignment thereof is filed with said Referee, said Referee shall not require the Plaintiff to pay in cash the entire amount bid at said sale, but shall execute and deliver to the Plaintiff or its assignee, a deed or deeds of the property sold upon the payment to said Referee of the amounts specified in items marked "First" , "Second", and "Third" above; that the Referee shall allow the Plaintiff to pay the amounts specified in "Second" and "Third" above when it is recording the deed; that the balance of the bid, after deducting the amounts paid by the Plaintiff, shall be applied to the amount due Plaintiff as specified in paragraph "Fourth" above; that if there is a surplus after applying the balance of the bid, the Plaintiff shall pay that amount to the Referee, who shall deposit it in accordance with paragraph "Fifth" above; and it is further

16-240953 - DaR

ORDERED, ADJUDGED AND DECREED that all expenses of recording the Referee's deed, including real property transfer tax, which is not a lien upon the property at the time of sale, shall be paid by the purchaser, not by the Referee from sale proceeds; and that any transfer tax shall be paid in accordance with Tax Law §1404; and it is further

ORDERED, ADJUDGED, AND DECREED that the mortgaged property is to be sold in one parcel in "as is" physical order and condition, subject to any state of facts that an inspection of the property would disclose; any state of facts that an accurate survey of the property would show; any covenants, restrictions, declarations, reservations, easements, right of way, and public utility agreements of record, if any; any building and zoning ordinances of the municipality in which the mortgaged property is located and possible violations of same; any rights of tenants or persons in possession of the subject property; prior liens of record, if any, except those liens addressed in RPAPL §1354; any equity of redemption of the United States of America to redeem the property within 120 days from the date of sale; and any rights pursuant to CPLR §317, §2003 and §5015 or any appeal of the underlying action or additional litigation brought by any defendant or its successor or assignee contesting the validity of this foreclosure; and it is further

ORDERED, ADJUDGED AND DECREED that the purchaser be let into possession of the property on production of the Referee's Deed or upon personal service of the Referee's deed in accordance with CPLR §308; and it is further

16-240953 - DaR

ORDERED, ADJUDGED AND DECREED that the Defendants in this action and all persons claiming through them and any person obtaining an interest in the property after the filing of the Notice of Pendency are barred and foreclosed of all right, claim, lien, title, and interest in the property after the sale of the mortgaged property; and it is further

ORDERED, ADJUDGED AND DECREED that within thirty days after completing the sale and executing the proper conveyance to the purchaser, unless the time is extended by the court, the officer making the sale shall file with the clerk a report under oath of the disposition of the proceeds of the sale in accordance with RPAPL §1355(1) and follow all local County rules regarding handling of Surplus Monies; and it is further

ORDERED ADJUDGED AND DECREED that if the purchaser or purchasers at said sale default(s) upon the bid and/or the terms of sale the Referee may place the property for resale without prior application to the Court unless the Plaintiff's attorneys shall elect to make such application; and it is further

ORDERED ADJUDGED AND DECREED that the Notice of Pendency filed on January 30, 2015 be deemed filed, *nunc pro tunc*, to the date of the expiration of the Notice of Pendency on March 14, 2011; and it is further

ORDERED ADJUDGED AND DECREED that the County Clerk of the County of NASSAU is hereby directed to accept as original a copy of the assignment of mortgage dated December 01, 2011 for purposes of recording; and it is further

16-240953 - DaR

ORDERED, ADJUDGED AND DECREED that Plaintiff shall serve a copy of this Judgment with Notice of Entry upon the owner of the equity of redemption, any tenants named in this action, and any other parties or persons entitled to service, including the Referee appointed herein; and it is further

ORDERED, ADJUDGED AND DECREED that nothing herein shall be deemed to relieve Plaintiff of any obligation imposed by RPAPL §1307 and RPAPL §1308 to secure and maintain the property until such time as ownership of the property has been transferred and the deed duly recorded; and it is further

ORDERED, ADJUDGED AND DECREED that when the Referee files a report of sale, he or she shall concurrently file a Foreclosure Actions Surplus Monies Form; and it is further

ORDERED, ADJUDGED AND DECREED that to ensure compliance herewith, Plaintiff shall file a written report with the court within six months from the date of entry of this judgment stating whether the sale has occurred and the outcome thereof.

Said property is commonly known as 34 AVE A, INWOOD, NY, 11096.

The legal description of the mortgaged property referred to herein is annexed hereto as Schedule "A".

SEP 1 3 2019

DATED: _____                    ENTER:

                                            HON. THOMAS A. ADAMS, J.S.C.

ENTERED
SEP 1 6 2019
NASSAU COUNTY
COUNTY CLERK'S OFFICE

16-240953 - DaR

## SCHEDULE A – LEGAL DESCRIPTION

ALL THAT CERTAIN CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEING IN THE INWOOD, TOWN OF HEMPSTEAD, COUNTY OF HEMPSTEAD, COUNTY OF NASSAU AND STATE OF NEW YORK, MORE PARTICULARLY BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE EASTERLY SIDE OF AVENUE A AT THE INTERSECTION OF THE  SOUTHWEST CORNER OF LAND OF LYDIA NOWLER DISTANT 79.06 FEET SOUTHERLY  FROM THE CORNER FORMED BY THE INTERSECTION OF THE SOUTHERLY SIDE OF GRAND CENTRAL AVENUE WITH THE EASTERLY SIDE OF AVENUE A;

RUNNING THENCE SOUTHERLY ALONG THE EASTERLY SIDE OF AVENUE A 45.94 FEET MORE OR LESS TO THE NORTHWEST CORNER OF LAND NOW OR FORMED TO ELMER JACKSON;

THENCE ALONG THE NORTHERLY LINE OF THE LAND NOW OR FORMED OF ELMER JACKSON ON A COURSE NORTH 85 DEGREES 21 MINUTES 40 SECONDS EAST 125.29 FEET TO THE WESTERLY LINE OF LAND NOW OR FORMERLY OF RHINCHART;

THENCE ALONG THE WESTERLY LINE OF LAND NOW OR FORMERLY OF RHINECHART ON A COURSE NORTH 7 DEGREES 27 MINUTES WEST 46.79 FEET TO THE LAND OF LYDIA BOWKER;

THENCE ALONG THE SOUTHERLY LINE OF LYDIA BOWKER ON A COURSE SOUTH 88 DEGREES 25 MINUTES 40 SECONDS WEST 116.11 FEET TO THE EASTERLY SIDE OF AVENUE A. THE POINT OR PLACE OF BEGINNING.

Drafter: James Kelly

## FEES AND DISBURSEMENTS

| | | |
|---|---|---|
| Fee for index number - . . . . . . . . . . . . . . . . . . . . . . . | CPLR 8018(a) | $400.00 |
| Referee's fee to compute, per order of the court - . . . | CPLR 8003(a) | $500.00 |
| Request for judicial intervention . . . . . . . . . . . . . . . | CPLR 8020(a) | $95.00 |
| Clerk's fee for filing of Notice of Pendency - . . . . . . | CPLR 8021(a)(10) | $1,035.00 |
| Motion fees - . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | CPLR 8020(a) | $90.00 |

**Total . . . . . . . . . . . . . . . . .**     **$2,520.00**

## ATTORNEY'S AFFIRMATION

The undersigned, Matthew Rothstein, Esq., pursuant to CPLR 2106 and under penalties of perjury affirms as follows:

That he/she is the attorney of record for the Plaintiff in the above captioned action; that the foregoing disbursements have been incurred in this action and are reasonable in amount and that the copies of documents or papers as charged herein were actually and necessarily obtained for use.

Dated:   May 13, 2019
Westbury, NY

RAS BORISKIN, LLC

By: Matthew Rothstein, Esq.
*Attorneys for Plaintiff*
900 Merchants Concourse, Suite 310
Westbury, NY 11590

16-240953 - DaR

Index No.: 004905/2008

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR HARBORVIEW
MORTGAGE LOAN TRUST 2005-9,

                                        Plaintiff,

        -against-

VEEDEL WENTWORTH, PATRICIA THOMAS; KEYANNA BOSTICK; NICOLE
BOSTICK, JACQUELINE WALKER

                        Defendants.

## ORDER CONFIRMING REFEREE REPORT AND
## JUDGMENT OF FORECLOSURE AND SALE

**RAS Boriskin, LLC**
*Attorneys for Plaintiff*
900 Merchants Concourse, Suite 310
Westbury, NY 11590
Telephone: 516-280-7675
Facsimile: 516-280-7674

16-240953 - DaR

NASSAU INDEX#
FILED
SEP 16 2019
NASSAU COUNTY
COUNTY CLERK'S OFFICE

EXHIBIT C

FILED: NASSAU COUNTY CLERK 07/01/2021 01:57 PM

NYSCEF DOC. NO. 36

INDEX NO. 000459/2020

RECEIVED NYSCEF: 06/29/2021

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU:   TRIAL TERM:   PART 24
-----------------------------------------X
VEEDEL D. WENTWORTH,                       INDEX NO.
                                           000459/2020
                    Plaintiff,

               -against-

SPECIALIZED LOAN SERVICING LLC,
RICHARD D. FEMANO, MATTHEW ROTHSTEIN,
SARA BORISKIN and RYAN MITOLA,


                    Defendants.
-----------------------------------------X
                         VIRTUAL PROCEEDINGS
                         MICROSOFT TEAMS
                         NASSAU SUPREME COURT
                         100 SUPREME COURT DRIVE
                         MINEOLA, NEW YORK 11501
                         JUNE 28, 2021


B E F O R E:        THE HONORABLE DAVID J. GUGERTY,
                    Justice of the Supreme Court.

A P P E A R A N C E S:
                    RAS LEGAL GROUP
                    Attorneys for Defendants
                    900 Merchants Concourse
                    Suite 310
                    Westbury, New York 11590
BY:                 RYAN MITOLA, ESQ. (AUDIO)


ALSO PRESENT:
ERIC MILGRIM - PRINCIPAL LAW CLERK
CHRISTINE FERGUSON - COURTROOM CLERK (AUDIO)


                         ANDREA V. SLOBODOW,
                         CSR-RPR-RMR-CRR

                         OFFICIAL COURT REPORTER

ORIGINAL

                                                  AVS

FILED: NASSAU COUNTY CLERK 07/01/2021 01:57 PM

NYSCEF DOC. NO. 36

INDEX NO. 000459/2020

RECEIVED NYSCEF: 06/29/2021

VIRTUAL PROCEEDINGS

1          (The following virtual proceedings were

2     recorded in Mineola, New York via Microsoft

3     Teams.)

4          THE COURT:  Ms. Ferguson, if you could call

5     the case, please.

6          COURT CLERK:  Judge, I just found out about

7     this, like, a second ago and I don't have the caption

8     yet.  I don't think I have it.

9          THE COURT:  Take your time.

10         COURT CLERK:  This is an e-filed case;

11    correct?

12         PRINCIPAL LAW CLERK MILGRIM:  It is e-filed.

13         COURT CLERK:  Can you give me the index

14    number?

15         THE COURT:  Yes; it's 459 of '20.  Yes, it

16    is e-filed.

17         COURT CLERK:  Calling in the matter of

18    Veedel D. Wentworth -- hold on -- oh -- versus RAS

19    Boriskin, Index Number 000456 (sic) of 2020.

20         Can we have the appearances, please.

21         THE COURT:  I think it's 459; right?

22         COURT CLERK:  Okay.  459.  This paper said

23    456.  Okay.

24         THE COURT:  Appearances, please.

25         MR. MITOLA:  This is Ryan Mitola,

AVS

FILED: NASSAU COUNTY CLERK 07/01/2021 01:57 PM

NYSCEF DOC. NO. 36

INDEX NO. 000459/2020

RECEIVED NYSCEF: 06/29/2021

VIRTUAL PROCEEDINGS

1     M-I-T-O-L-A, from RAS, R-A-S Legal Group, 900

2     Merchants Concourse, for the Defendants, your Honor.

3            Good morning.

4            THE COURT:  Good morning, Mr. Mitola.

5            And no other appearances from the Plaintiff?

6            Hearing no appearance from what we believe

7     is a pro se Plaintiff in this matter, Mr. Wentworth,

8     we will proceed.

9            Mr. Mitola, do you have an application

10    relative to motion sequence 4, 5, 6, 7, and 8?

11           MR. MITOLA:  Yes.

12           Due to the Defendant's (sic) nonappearance,

13    and the fact that this case was already dismissed, I

14    do make a 202.27 application to have all of the

15    motions deemed dismissed or denied, with prejudice.

16           In addition, I resubmit orally our

17    application to prevent the Plaintiff from engaging in

18    further motion practice without prior written approval

19    by the Court, as we believe that this is an abuse of

20    the court system at this point.  And you know, we

21    respond to any application that has been e-filed --

22    there's a number of them that hasn't been -- we seek a

23    denial of all of the pending applications and an order

24    prohibiting Defendant -- sorry -- the Plaintiff,

25    Mr. Wentworth, from engaging in further applications

                                                    AVS

VIRTUAL PROCEEDINGS

1       without written approval of the Court.

2               THE COURT:  Okay.  The Court would note that

3       it's now 9:51 a.m.  This case was scheduled for

4       9:30 a.m.  We've waited much longer than the customary

5       ten minutes or so, to give someone a chance to appear.

6       And if you'll just give me one moment, I will take a

7       brief recess to consider the application and then

8       we'll return to the record.

9               MR. MITOLA:  Thank you, your Honor.

10              THE COURT REPORTER:  Mr. Mitola, what was

11      the section number you cited?

12              MR. MITOLA:  I believe the full citation is

13      22 NYCRR 202.27.

14              (There was a brief pause in the

15          proceedings.)

16              THE COURT:  Okay.

17              Returning to the record.

18              The Court hereby grants the oral application

19      of Mr. Mitola on behalf of RAS Boriskin, and hereby

20      dismisses the -- any and all motions that were filed,

21      as this case has already been dismissed by Justice

22      Voutsinas and there has been no proper application to

23      file motions in this matter, the ones that were

24      mentioned.  So motion sequence 4, 5, 6, 7, and 8 are

25      hereby dismissed, pursuant to the section that was

                                                    AVS

FILED: NASSAU COUNTY CLERK 07/01/2021 01:57 PM
NYSCEF DOC. NO. 36

INDEX NO. 000459/2020
RECEIVED NYSCEF: 06/29/2021

VIRTUAL PROCEEDINGS

1    cited by counsel a few moments ago.

2              And the -- one moment.  Off the record.

3              (There was a discussion held off the

4         record.)

5              (There was a brief pause in the

6         proceedings.)

7              THE COURT:  So just to reiterate:  That's

8    any and all motions filed by the Plaintiff in this

9    matter currently are dismissed, and Plaintiff is not

10   permitted to file any new motions or applications

11   without the prior permission of the Court.

12             And Mr. Mitola, as a Defendant, you should

13   serve the Plaintiff with a copy of the transcript by

14   regular and certified mail after it is so-ordered by

15   me.

16             Do you understand?

17             MR. MITOLA:  Understood, your Honor.  We are

18   going to order a transcript today and have it rushed.

19   We will immediately resubmit it for your signature to

20   be so-ordered and we will then serve it with a notice

21   of entry.

22             THE COURT:  Okay.  Anything else for the

23   record?

24             MR. MITOLA:  I thank the Court for its

25   assistance in this matter.  Thank you.

                                              AVS

VIRTUAL PROCEEDINGS

1        THE COURT: You're welcome.

2        All right.  Off the record.

3                *       *       *

4   THE FOREGOING IS CERTIFIED TO BE A TRUE AND ACCURATE

5   TRANSCRIPTION OF THE ORIGINAL STENOGRAPHIC MINUTES OF THIS

6   VIRTUAL PROCEEDING.

7

8

9                        *Andrea V. Slobodow*

10                       ANDREA V. SLOBODOW, CSR
                          Official Court Reporter

11

12

13  SO ORDERED:

14

15

16  HONORABLE DAVID J. GUGERTY

17                                          **ENTERED**

18                                          **Jul 01 2021**

19                                          NASSAU COUNTY
                                            COUNTY CLERK'S OFFICE

20

21        June 28, 2021
    DATED:

22

23

24

25

                                                    AVS

6 of 6